## Fayette Mutual Fire Insurance Company *vs.* Granville Fuller & another.

A vote by the directors of a mutual insurance company, cancelling all outstanding policies, with a provision that the cancellation shall take effect on a certain day, does not take away their authority after that day to lay a necessary assessment upon the deposit notes.

If no mode of calling meetings of the directors of a mutual insurance company is prescribed in the by-laws, except that the secretary shall notify all such meetings, and if the by-laws do not require that the object of such meetings shall be stated in the notices, an assessment upon deposit notes may be laid at a meeting notified by the secretary, by order of the president, although it is not attended by the president, and although the object of the meeting was not stated in the notices.

A statement of the condition of a mutual insurance company, prepared upon making an assessment, which shows all the separate items of liabilities for which the assessment is made, is sufficient, under Gen. Sts. *c.* 58, § 54, although in summing up the aggregate of them other items for estimated expenses, return premiums and losses in collecting are included.

If the by-laws of a mutual insurance company do not provide that the deposit notes shall be deemed to be absolute funds of the company, an assessment may be laid before the collection of them has been made or ordered.

Payment of an assessment upon the deposit notes of a mutual insurance company cannot be resisted on the ground of the omission to assess certain notes liable to assessment, if it appears that all the notes which were in force during the time in question were assessed except a very small number, which had been adjusted and cancelled by officers of the company before making the assessment, and which were of so small an amount as not materially to increase the assessment upon the remainder.

If a mutual insurance company have issued policies for terms varying from less than one year to five years, and in making an assessment upon the deposit notes have reduced those which were given upon policies for more than one year to "one year notes," by assuming as the basis of such assessment such a proportion of the amount expressed upon their face as is found by an auditor, whose report is taken as an agreed statement of facts, to be "fair and reasonable, and as near to perfect equality as can be approximated in such calculations," this court will not, upon a hearing upon the agreed statement of facts, declare the assessment void, as being unequal.

If the by-laws of a mutual insurance company provide that policies may be surrendered at any time to be cancelled, and that the insured shall receive the return premium in accordance with a certain table, and, after an injunction has been laid upon the company, the directors, under the authority of this court, have duly cancelled all the outstanding policies, the return premiums due to the policy holders are just claims against the company, within the meaning of Gen. Sts. *c.* 58, § 48, and may be included among the items of liability, in making an assessment upon the deposit notes.

Contract to recover the amount of assessments laid by a mutual insurance company upon deposit notes given by a member upon obtaining insurances. The case was referred to J. W. Perry, as auditor, who reported the following facts, which the parties agreed to take as an agreed statement of facts:

At the annual meeting of the company in January 1861, twenty directors were chosen. On the 22d of June 1861, the company were enjoined by this court from doing any further business, except that they were authorized and empowered to choose officers, and do all necessary acts to continue their corporate existence, until the concerns thereof should be fully and finally closed, and also to lay all such assessments, according to the provisions of law, as might be necessary to pay the liabilities of the company. On the 12th of November. 1861, the above injunction was so far modified and dissolved that the directors were authorized and empowered, under the direction and with the written assent of the receiver, to cancel any and all of the outstanding policies, according to the 9th article of the by-laws, and upon the terms therein expressed. At a meeting of the directors held on the 20th of November 1861, it was voted to " cancel all the outstanding policies of the Fayette Mutual Fire Insurance Company . . . . . . said cancellation to take effect from the 26th day of November 1861," according to the foregoing decree. It was also voted " that a committee of three be appointed by the president to value the outstanding policies and report the whole liability of the company, and also a plan for an assessment." The receiver assented to the cancellation of the policies ; and the committee was appointed. On the 22d of November 1861, a written notice, signed by the secretary of the company and the receiver, was sent to all the holders of policies, informing them of the above cancellation thereof.

A special meeting of the directors was called for the 11th of December 1861, by order of the president, and the secretary sent a written notice thereof to each of the directors. Seven of the directors attended this meeting, but the president was absent. The notices did not state the object of the meeting, and there was no by-law of the company requiring that this should be done. At this meeting it was voted to raise $12,000, by assessment, to pay losses, bad debts, return premiums, and expenses of settling up the affairs of the company. At the same meeting, a statement of the condition of the company was made and signed by the directors who were present, in

which the items of the losses and liabilities were stated in detail, with the amount of each carried out in a column at the end of the line. Immediately underneath these items were the following:

Current expenses from August 12, 1859, to December 12, 1861, . . . . . . . $3723.60

Expenses and services of receiver, estimated at . 800.00

Return premiums, . . . . . . 1226.15

Other expenses of closing up the affairs of the company, and estimated deficiences not otherwise provided for, . . . . . . . 1170.00

All of these items were added up together, and amounted to $12,917.60, from which sum a deduction was made of the premiums received, amounting to $4354.28, leaving a balance of $8563.32, to which was added $3425.32, being forty per cent., for bad debts and expenses of collecting, giving a result of $11,988.64.

The policies of the company were issued for one, two, three, four and five years; and some for less than one year. In making the assessment, the notes and premiums were all reduced to one year notes, except those given for policies issued for less than one year, which were called one year. This reduction was made by calling yearly deposits at their full amount; the two year deposits at three fourths of their amount; the three year deposits at one half of their amount; the four year deposits at three eighths of their amount; and the five year deposits at one third of their amount. This reduction was necessary, because the premiums and deposits for terms longer than one year were proportionally larger. None of the witnesses examined knew the proportions established by other companies for two and four year policies, but the proportions established by other mutual companies for three and five year policies were one half and one third respectively, and the uniform rule of the plaintiffs was to fix the proportion as above upon notes for the above mentioned lengths of time, and the auditor found as a fact that such proportion is fair and reasonable, and as near to perfect equality as can be approximated in such calculations; that the ratio or rate

for each month was accurately obtained; that the computations were made with substantial accuracy; that the sums raised were necessary and proper to be raised, and the rate or ratio was equally applied to all the deposits and premiums liable to be assessed, during the months when computations were made; and that in fact all the assessments were just and equal, and approximated as near to equality as is possible, upon all the members liable to assessment.

The auditor also found that there was a large number of notes in the hands of the company which did not enter into the computation; but of these only three which were not assessed were in force during the term of the defendants' policies. The first of these was cancelled in December 1860; the second was a small note given for a policy, on which there was a loss in October 1860, and the secretary testified that he settled the loss by paying a certain sum and agreeing to release the holder of the policy from all liability upon his deposit; and the third was cancelled in December 1860. The auditor found that every premium and deposit liable to assessment was assessed in a just and equal manner; that, if any were omitted, it was through mistake and accident; that the omissions, if any, were of so trifling an amount that the liability of the defendants was not materially increased; that the notes in suit were signed by the defendants; that the current expenses and the estimated expenses of closing up the company were reasonable; that the addition of forty per cent. is according to the usual practice of mutual insurance companies, and not too large; and that the amount stated for return premiums was accurately assessed.

The 9th article of the by-laws was as follows: "This policy may be surrendered at any time to be cancelled, and the insured shall receive the return premium in accordance with the table of short rates, and the secretary may cancel this policy when, in the opinion of the president and secretary, there is sufficient cause therefor, giving three days' notice to the assured." Other material portions of the by-laws are copied in the opinion.

Upon these facts judgment was rendered for the plaintiffs in the superior court, and the defendants appealed to this court.

*J. H. Butler*, for the defendants. The vote of December 11, 1861, was void, because the policies of the persons assuming to act as directors had been cancelled, and they were no longer eligible as directors. Gen. Sts. *c.* 58, § 43. The meeting was not called by the directors. The absolute funds of the company had not been exhausted. The collection of the notes should have been ordered before laying an assessment. Gen. Sts. *c.* 58, §§ 48, 54. *Long Pond Ins. Co.* v. *Houghton*, 6 Gray, 77. *Appleton Ins. Co.* v. *Jesser*, 5 Allen, 446. The assessment was not laid by the president and directors. The amount subject to assessment was not separately shown, in the statement of the condition of the company. Gen. Sts. *c.* 58, § 54. Notes were intentionally omitted, which should have been assessed. *Marblehead Ins. Co.* v. *Hayward*, 3 Gray, 208. Return premiums are not just claims against a mutual insurance company, within the meaning of Gen. Sts. *c.* 58, §§ 48, 51.

*D. Saunders, Jr. & G. E. Hood*, for the plaintiffs, cited *People's Ins. Co.* v. *Allen*, 10 Gray, 297; *Jones* v. *Sisson*, 6 Gray, 288; *Marblehead Ins. Co.* v. *Underwood*, 3 Gray, 210; *New England Ins. Co.* v. *Belknap*, 9 Cush. 140; *Swamscott Machine Co.* v. *Partridge*, 5 Fost. (N. H.) 369; *New Hampshire Ins. Co.* v. *Rand*, 4 Fost. (N. H.) 428.

DEWEY, J. This case comes before us upon the report of an auditor, who, after a full examination of the details of the manner of making the assessment, and the principles by which the same was regulated, finds " that the ratio for each month was accurately obtained, that the computations were made with substantial accuracy, that the sums raised were necessary and proper to be raised, and that all the assessments were just and equal, and approximated as near to equality as is possible, upon all the members liable to assessment." This report is to be adopted by us, unless the facts stated in reference to the assessment show some irregularity in the proceedings fatal to its validity. Upon the part of the defendants, various reasons are assigned in avoidance of it.

1. It is contended that there were no directors competent to make this assessment. It is said that this result follows from

the vote of the directors cancelling all the outstanding policies on the 26th of November 1861, whereby the directors ceased to retain their offices, and the company was in fact disorganized. But we think this position untenable. The directors had been legally chosen, and continued in office and were competent to act in making assessments. In the order of this court of June 22d 1861, enjoining the corporation from the further prosecution of their ordinary business, it was ordered that the corporation be empowered " to do all necessary acts to continue their corporate existence, until the concerns thereof shall be fully and finally closed, and also to lay all such assessments, according to the provisions of law, as may be necessary to pay the liabilities of said company." The only practical effect of the vote to cancel the policies of the members of the company on the 26th of November 1861 was to fix a date upon which to calculate the liability of the company for losses and return premiums.

2. It is said that the special meeting of the directors, at which the assessment was laid, was not duly called, because it was called by the president only, and not by the president and directors. No mode of calling such meetings is prescribed by the by-laws of the company. By art. 5th it is provided that the president and directors " shall meet at the company's office on the first Monday of each month, and at such other times as they may deem necessary. Five members shall constitute a quorum." In the absence of any express provision in the by-laws as to calling such meetings, we are of opinion that the notice given by the secretary, by direction of the president, was sufficient, and that, upon the assembling of a sufficient number of the directors to constitute a quorum, they might proceed to act upon the subject of ordering an assessment upon the members of the company to pay losses, and other liabilities that constituted proper subjects of assessment. *Sargent* v. *Webster*, 13 Met. 497. It may be further added that by the 6th by-law the secretary is to " notify all meetings of the directors," and such was the notice here given. This meeting of the directors, when assembled, was competent to make the assessment, although the president was absent.

3. It is said that this assessment is void by reason of its omission to comply with the provisions of Gen. Sts. *c.* 58, § 54, requiring a statement showing the amount of cash on hand, deposit notes and liabilities subject to assessment, to be made by the directors, signed by them and duly recorded. In the opinion of the court, the facts stated show a sufficient compliance with the statute in that respect.

4. It is urged that these deposit notes should have been treated as absolute funds, to be applied to the payment of losses and expenses, before the assessment could lawfully be made. The cases of *Long Pond Ins. Co.* v. *Houghton*, 6 Gray, 77, and *Appleton Ins. Co.* v. *Jesser*, 5 Allen, 446, which are relied upon by the defendants, were unlike the present. No provision exists in the by-laws of this company declaring all premium and deposit notes to be absolute funds of the company, and as such to be first applied to the payment of losses and expenses. By art. 8 of the by-laws, " the directors may make such assessments as may be necessary." Nor was there any violation of Gen. Sts. *c.* 58, § 48, in making the assessment. The case sufficiently shows that the just claims against this company exceeded the funds in their hands to be applied to discharge the same.

5. Upon the finding of the auditor, and the facts stated by him, no objection exists as to the omission of any deposit notes not included in the aggregate which was made the basis of the assessment.

6. In adjusting assessments upon deposit notes and liabilities arising under policies issued at different times, and to continue for different periods, some being for one year, and others varying from two to five years, a great practical difficulty arises in making the assessments exactly proportional and equal. All that has been required is a reasonable approximation to such a result. In the present case the auditor finds as a fact that the proportion adopted in adjusting this assessment to the different periods for which the policies were held " was fair and reasonable, and is as near to perfect equality as can be approximated in such calculations." No legal principle seems to have been violated in this respect, and we see no reason for avoiding the

assessment for any error in the mode of adjusting the propor-
tions as between the various policies, in reference to the period
for which they were issued. *Marblehead Ins. Co.* v. *Underwood,*
3 Gray, 210. *Jones* v. *Sisson,* 6 Gray, 288.

7. It is further contended that this assessment is void, because
it included the sum of $1226.15 for indebtedness for return pre-
miums. Ordinarily assessments have been made to cover losses
and expenses. The provisions of Gen. Sts. *c.* 58, § 48, are:
" When the just claims against a mutual fire insurance com-
pany exceed the funds, its directors shall assess such sums as
may be necessary upon the members, in proportion to their pre-
mium and deposit." The question then arises, whether the
claims of the members of the company whose policies had been
cancelled for a return premium were not, under the facts of the
present case, to be considered as just claims, and as such to be
included in the liabilities of the company for which an assess-
ment might be made.

Art. 9 of the by-laws of the company clearly authorizes a
cancellation, and imposes upon the company the duty of paying
to the assured in such case the return premium. Each member
in taking his policy took it subject to the claims of the other pol-
icy holders to receive a return premium. In this state of things,
upon the application of the insurance commissioners, this court
enjoined the company from proceeding further in their ordinary
business ; but the directors were authorized and empowered,
with the written assent of the receiver, to cancel any and all
the outstanding policies issued by the company, according to
the 9th article of the by-laws, and upon the terms therein ex-
pressed, and also to lay all such assessments as might be neces-
sary to pay the liabilities of said company. The form of can-
cellation adopted here was by a vote of the directors to cancel
all the outstanding policies, and the appointment of a com-
mittee by the president to value them. The receiver duly as-
sented to the cancellation in writing, and the secretary and the
receiver gave due notice of the fact of such cancellation to
the holders of policies. Under these circumstances, the corpo-
ration became liable to the members of the company whose

policies had been cancelled for a return premium, calculated upon a proper basis, and the amount thus due was properly made one of the items of the assessment.

The result is, therefore, that the objections to the assessment are not sustained.     *Judgment for the plaintiffs*